**CONNECTICUT STATE DEPART-MENT OF SOCIAL SER-VICES, et al.**

v.

**Tommy THOMPSON**

**No. CIV.A.3:00 CV 2020 S.**

United States District Court, D. Connecticut.

Oct. 23, 2003.

Maite Barainca, Richard J. Lynch, Attorney General's Office, Health & Human

Services, Hartford, CT, for Dept. Social Services.

Lisa Bornstein, Richard Robert Brown, Martha Hirschfield, Hannah A. Stires, U.S. Department of Justice, Washington, DC, Patrick F. Caruso, John B. Hughes, U.S. Attorney's Office-NH, New Haven, CT, for HHS.

Gill W. Deford, Center For Medicare Advocacy, Inc., Willimantic, CT, for Philip Myrun.

Keith B. Gallant, Cummings & Lockwood, New Haven, CT, Rosemary Miller, McGovern, Attorney General's Office, Hartford, CT, Brad S. Plebani, Judith Stein, Center of Medicare Advocacy, Willimantic, CT, for Confesora Santiago.

### RULING ON MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

UNDERHILL, District Judge.

In October 1999, the Connecticut State Department of Social Services and a class of Medicare beneficiaries (collectively known as "the plaintiffs") brought a suit challenging a series of procedures in the Department of Health and Human Services' ("the government") system of administrative review of Medicare claims. Discovery in the suit commenced in February 2000, upon certification of the plaintiff class of Medicare beneficiaries. In February 2001, the plaintiffs filed their motion for summary judgment. Briefing was completed on the cross-motions for summary judgment in May 2001. The motions were argued on October 3, 2001 and decided in a written opinion dated September 9, 2002.

Plaintiffs prevailed on three of four issues presented. An order directing the government to send out written notices of initial determinations on all pending requests for payment, regardless of whether the claim had been filed properly, was issued in the case. The government then filed a motion for partial reconsideration under Rule 59(e). The motion was denied and judgment entered on February 20, 2003. The government filed a notice of appeal on March 7, 2003.

Pursuant to Local Rule 11(a) and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, plaintiffs have moved for an award of attorneys' fees and expenses.

### DISCUSSION

*Statutory Requirements*

Subsection 2412(d)(1)(A) of the EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action ... including proceedings for judicial review of agency action ...." 28 U.S.C. § 2412(d)(1)(A). There are four threshold requirements for an award of fees and expenses under the EAJA. The moving party must: (1) file within 30 days of final judgment; (2) be the prevailing party; (3) show that the government's position was not substantially justified; and (4) show an absence of special circumstances that would make an award of fees unjust. 28 U.S.C. § 2412(d)(1)(B).

The EAJA requires that an application for attorneys' fees and expenses be filed "within thirty days of final judgment in the action." *Id.* On February 20, 2003, the government's motion for Rule 59 reconsideration was denied and judgment entered. Plaintiffs filed their application for attorneys' fees and costs on March 24, 2003, well within the 30 days prescribed by the EAJA. The question whether a plaintiff is a "prevailing party" within the meaning of the fee-shifting statutes is a threshold question that is separate from the question of the degree to which the

plaintiff prevailed. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). For a plaintiff to be considered a "prevailing party," and thus eligible for an award of fees, it need not have succeeded on "the central issue" in the case, *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 790–91, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), and need not have obtained the "primary relief sought," *Id.* It is sufficient that the plaintiff succeeded on "any significant issue in [the] litigation," *Id.* at 791, 109 S.Ct. 1486 (internal quotation marks omitted), regardless of "the magnitude of the relief obtained," *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), if he received "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12, 113 S.Ct. 566.

■ Here, plaintiffs prevailed on three of the four substantive claims, obtaining an order and judgment providing declaratory and injunctive relief that required the government to provide full procedural rights at the initial determination stage of claims review. Accordingly, plaintiffs are prevailing parties under the EAJA.

■ Because plaintiffs have established that they have timely filed and are prevailing parties, the burden shifts to the government to make a "strong showing" that its position was substantially justified. *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1085 (2d Cir.1983). That is, the government must demonstrate that its position had a reasonable basis in law and fact. *Sotelo–Aquije v. Slattery,* 62 F.3d 54, 57 (2d Cir.1995). The government argues that its position was substantially justified in that its interpretation of the regulations pertaining to

an initial determination was reasonable. The September 9, 2002 ruling, however, clearly concluded that the government's interpretation of the regulations was patently unreasonable and that there was no substantial justification for the government's decision not to provide a notice of initial determinations to individual beneficiaries. As noted in that ruling, "[t]here can be no serious dispute that the Medicare regulations contemplate that the Secretary will provide a notice of initial determination not only in response to proper claims filed by providers, but also in response to requests for initial determinations filed by beneficiaries." *Connecticut State Dep't of Soc. Serv. v. Thompson,* 242 F.Supp.2d 127, 144 (D.Conn.2002). The plain language of the regulations requires that a notice of initial determination be sent in response to a beneficiary's request for determination, regardless of whether a complete claim had been filed by the health care provider. The government's actions were inconsistent with the plain language of the regulations and established principles of due process. *See Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (noting that fundamental principles of due process require that those facing significant loss receive adequate notice of changes and an opportunity to respond). Accordingly, the government cannot meet its burden to make a strong showing that its actions were substantially justified.

■ Because there was no substantial justification for the government's actions, the final step of the EAJA inquiry requires that the court determine whether there are special circumstances that would make an award of attorney's fees unjust. The "special circumstances" exception to the EAJA is a " 'safety valve' [that] ... gives the court discretion to deny awards where equitable considerations dictate an award

should not be made." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5, 11, *reprinted in* 1980 U.S.C.C.A.N 4984, 4990. No such considerations exist in this case. Accordingly, plaintiffs have met the EAJA's threshold requirements for an award of attorneys' fees.

### Calculation of the Award

■ Upon establishing its eligibility for an award of attorneys' fees and expenses under the EAJA, plaintiffs are entitled to a reasonable fee award. 28 U.S.C. § 2412(d)(1)(A). In order to determine a reasonable fee award under the EAJA, the district court calculates a "lodestar" figure, which is arrived at by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. 28 U.S.C. § 2412(d)(1)(B). Accordingly, determining the amount of the award will be a three-step process. The court will first determine the appropriate hourly rate for the attorneys and their support staff, and then determine the number of hours reasonably expended in litigating the matter. Finally, the hourly rate and total hours will be multiplied to determine the amount of plaintiffs' award.

### Hourly Rate

Section 2412(d) provides a statutory cap of $125 per hour as the standard hourly rate. 28 U.S.C. § 2412(d)(2)(A). However, if the court "determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved," it may, in its discretion, make an award based on a higher hourly rate. *Id.*

■ Here, plaintiffs seek an enhancement of the statutorily provided $125 rate on the ground that their attorneys possessed specialized skills in benefits law that were required for this litigation. Moreover, the plaintiffs contend that a reasonable fee award should be based on prevailing market rates in the District of Connecticut. Each of the plaintiffs' three public interest attorneys, Deford, Plebani, and Stein, has been practicing law for more than 20 years. Decl. of Pl. Attorneys and Paralegals (doc. # 110). Based on an several affidavits from attorneys who practice in this District, plaintiffs argue that $325 per hour is an appropriate hourly rate for Attorneys Deford, Plebani, and Stein. Attorney Brad Gallant, a partner in private practice who assisted in the final stages of the litigation seeks $375 per hour, his 2002 standard hourly billing rate in private practice. Decl. of Keith Bradoc Gallant (doc. # 110) at 3, ¶ 10. The plaintiffs also seek reimbursement for work provided by their paralegals. The plaintiffs contend that $85 is an appropriate hourly rate for the work performed by the two paralegals.

The government opposes any enhancement of the $125 hourly rate prescribed by the EAJA. Specifically, the government contends that an enhancement is appropriate only under circumstances where the litigation requires skills and expertise above and beyond the attorney's knowledge of a particular area of law. In the government's view, situations like the case at bar, where the attorneys possessed expertise in a complex statutory and regulatory scheme, would not warrant a fee enhancement under the EAJA.

In *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court interpreted the special factor language of the EAJA and concluded that "the exception for 'limited availability of qualified attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowl-

edge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id.* at 572, 108 S.Ct. 2541.

To date, there is division among the federal circuit courts on the issue of interpreting the Supreme Court's holding in *Pierce.* The Seventh, Ninth, and Eleventh Circuits have interpreted *Pierce* to allow an enhancement in situations where the attorneys have specialized expertise in a particular area of law. *Raines v. Shalala,* 44 F.3d 1355, 1361 (7th Cir.1995) (interpreting *Pierce* to find that "an identifiable practice specialty not easily acquired by a reasonably competent attorney" can be considered a special factor warranting fee enhancement); *Pirus v. Bowen,* 869 F.2d 536 (9th Cir.1989) (holding that a fee enhancement was available for specialized expertise in social security law); *Jean v. Nelson,* 863 F.2d 759, 774 (11th Cir.1988), *aff'd,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (concluding that special expertise in the field of immigration law may be considered a special factor in favor of fee adjustment). In contrast, the D.C., Fourth, and Fifth Circuits have construed *Pierce* narrowly to make a fee enhancement "available only for lawyers whose specialty 'requir[es] technical or other education outside the field of American law.'" *F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 598 (D.C.Cir.1996); *see also Estate of Cervin v. Commissioner,* 200 F.3d 351, 354 (5th Cir.2000) (concluding that although expertise in tax law, Texas community property law, and insurance, were necessary for the successful litigation of the case, it was not a special factor warranting a fee enhancement under the EAJA); *Hyatt v. Commissioner,* 315 F.3d 239, 253 (4th Cir.2002) (holding that fee enhancement was available only where the attorney "possessed specialized training or expertise beyond that which can and should

be acquired by a reasonably competent attorney engaged in the practice of a legal specialty that he or she has chosen to become proficient in by diligent study and work.").

I conclude that the narrow interpretation of the EAJA's special factor language, which the government relies on in this case, is inconsistent with the purpose of the EAJA and the Supreme Court's interpretation of the statute in *Pierce.* "[T]he language of section 2412(d)(1)(A) must be construed with reference to the purpose of the EAJA and the realities of litigation against the Government. The purpose of the EAJA was to counterbalance the financial disincentives to vindicating rights against the Government through litigation ...." *Sullivan v. Finkelstein,* 496 U.S. 617, 630, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). In *Pierce,* the Supreme Court acknowledged the policy considerations animating the statute's enactment when it considered the scope of the statute's "special factors" language. Under *Pierce,* special factors that would trigger fee enhancement included "identifiable practice specialt[ies]" and expertise. *Pierce,* 487 U.S. at 572, 108 S.Ct. 2541. Although patent law was the only specialty identified by the Court, there is no reason to believe the Court intended the universe of such specialties to be limited exclusively to patent law.

In the instant case, the litigation required lawyers with expertise in the statutory and regulatory scheme governing the provision of Medicare benefits. The plaintiffs were represented by attorneys employed by the Center for Medicare Advocacy ("the Center") in Willimantic, Connecticut. The Center is "a private, nonprofit organization which provides education, advocacy, and legal assistance" to Medicare beneficiaries. Center for Medicare Advocacy Website, *available at*

*http://www.medicareadvocacy.org* (last visited October 22, 2003). Having litigated various actions challenging provisions of the Medicare statute and regulations, the Center's attorneys had extensive knowledge of the statutory and regulatory scheme. Such knowledge goes far beyond the scope of the general legal acumen expected of a competent attorney handling federal litigation. Indeed, the "[e]xpertise and skills that they developed are in many ways akin to those developed by a patent lawyer: expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of the needs of a particular class of clients— in this case, the elderly—and of how those needs could best be met under the existing statute and regulations." *Pirus v. Bowen,* 869 F.2d 536, 541 (9th Cir.1989).

In addition to the fact that the plaintiffs' attorneys possessed specialized expertise in the area of Medicare law, the nature of this litigation was unusually complex. The plaintiffs' attorneys dealt with difficult procedural issues such as identifying and certifying a plaintiff class of Medicare beneficiaries, coordinating a lengthy discovery effort, and preparing dispositive motions based on findings culled from the discovery process. Substantively, the issues presented throughout the litigation were not straightforward or rudimentary, *see Stockton v. Shalala,* 36 F.3d 49, 50 (8th Cir. 1994) (concluding that special factor enhancement is not justified in a "straightforward social security disability case"), but rather, were "particularly difficult [and] complex." *Id.* It was clear throughout the litigation process that the plaintiffs' attorneys' specialized expertise in this arena was essential to the effective handling of the case and allowed the case to progress in an efficient fashion. Accordingly, it is entirely appropriate that the special factor exception to the statutory cap be employed to reflect the attorneys'

considerable expertise in the area of Medicare benefits law.

■ In determining the enhanced hourly rate, the court looks to the prevailing hourly rate in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation. *See Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Over the past several years, other District of Connecticut judges who have considered this issue have concluded that an hourly rate of $250—$300 is the prevailing market rate for attorneys with high degree of expertise in their field of law. For example, in *Lieberman v. Dudley,* 1998 WL 740827, at *4 (D.Conn. July 27, 1998), Judge Nevas awarded an attorney an hourly rate of $250, noting that the attorney was an experienced civil rights litigator with over 30 years of experience in Connecticut. In *Calovine v. City of Bridgeport,* 1998 WL 171432, at * 1 (D.Conn. Feb.4, 1998), Judge Eginton awarded an attorney an hourly rate of $250 on the grounds that the attorney was "among the most experienced plaintiffs' civil rights litigators in the state." In *Russo v. Coppola,* No. 3:93CV1734 (AHN), slip op. (D.Conn. Feb. 6, 1995) (Ruling on Application for Attorneys' Fees and Costs Feb. 6, 1995), Judge Nevas awarded fees under section 1988 based on an hourly rate of $250 for a partner with over thirty years' experience in this district, and $150 per hour for two associate attorneys with two and three years of experience in this district. In *Omnipoint Communications, Inc. v. Planning and Zoning Com'n of Town of Wallingford,* 91 F.Supp.2d 497 (D.Conn.2000), a civil rights case brought pursuant to 42 U.S.C. § 1983, Judge Eginton found rates of $300 per hour and $250 per hour to be reasonable rates for partners in a Stamford, Connecticut law firm. In *LaPointe v. Windsor Locks Board of*

*Education,* 162 F.Supp.2d 10, 18 (D.Conn. 2001), a section 1983 case, Judge Droney found that $275 was a reasonable hourly rate for an attorney from Manchester, Connecticut with 20 years of experience. In *Evanauskas v. Strumpf,* 2001 WL 777477 (D.Conn. June 27, 2001), Judge Hall found reasonable an hourly rate of $275 per hour for a solo practitioner in a consumer case based upon similar awards in other cases and the Court's knowledge of hourly rates in Connecticut. In *Tsombanidis v. City of West Haven,* 208 F.Supp.2d 263, 276 (D.Conn.2002), Judge Goettel awarded an hourly rate of $275 under section 1988.

There are several factors that affect actual billing rates by attorneys in this District. First, large firm lawyers generally bill at higher rates than do small firm lawyers or solo practitioners. For example, one very experienced partner of a large firm in Hartford submitted an affidavit to me this year in support of a motion for sanctions in which he stated that his standard hourly billing rate is $500 per hour. Second, lawyers at firms with offices in major metropolitan areas outside this state generally charge higher rates than do lawyers from firms that practice almost exclusively within Connecticut. Third, hourly rates charged by lawyers in lower Fairfield County are higher than the hourly rates charged by lawyers based in counties farther from New York, and hourly rates charged by lawyers in the larger cities in Connecticut are higher than the hourly rates charged by lawyers based in smaller towns. Each of these factors reflect, in large part, the dramatically different overhead expenses shouldered by lawyers in different practice settings and in different parts of the state.

Based on the decisions cited above, the affidavits submitted by plaintiffs in support of their motion,[1] and on my knowledge of prevailing rates for legal services in the District of Connecticut, I have determined that the hourly rates requested by plaintiffs for the four attorneys in this case are appropriate to reflect their extensive experience and expertise, the number of lawyers with whom they practice, and the geographic setting of their law offices. The requested rates of $325 for Attorneys Deford, Plebani and Stein and the requested rate of $375 for Attorney Gallant are fully consistent with hourly rates charged by comparable attorneys practicing in this District. Indeed, Attorney Gallant, who is a private practitioner in New Haven, actually charged $375 as his standard billing rate during 2002.

The plaintiffs also request an hourly rate of $85 for the two paralegals, Laura Stauning and Larry Glatz, who performed work in the case. Paralegals in Connecticut bill their time at widely ranging rates. These rates can be as low as $30 per hour, but experienced or specialized paralegals can command well over $100 per hour. Here, both paralegals possessed considerable legal experience. At the time she performed work in this case,

---

1. One of the affidavits submitted by plaintiffs was made by Felix Springer. Attorney Springer is a partner of Day, Berry & Howard LLP, my former law firm. I do not believe that there would be any ethical problem with my considering that affidavit, but I decline to do so to avoid even the hint of an appearance of impropriety. In any event, it is unnecessary for me to consider Attorney Springer's affidavit because I am personally familiar with the range of billing rates by attorneys at Day, Berry & Howard LLP, at least through September 1, 1999, when I terminated my relationship with that firm. For example, during 1999, when I had about 14 years' experience as a lawyer and was working out of the Stamford, Connecticut office of that firm, my time was billed at $340 per hour.

during the summer and fall of 2000, Ms. Stauning was a law school graduate and had worked at the Center during the two prior summers and during her final year of law school. Decl. of Laura Stauning at ¶ 2. At the time of his participation in the case, Mr. Glatz had been a paralegal in Connecticut Legal Services's Legal Assistance to Medicare Patients unit since 1982. Decl. of Larry Glatz at ¶ 1. Based on his considerable knowledge and experience in the area of Medicare appeals, he frequently consulted with plaintiffs' attorneys throughout the country on the mechanics of the Medicare appeals process. *Id.* at ¶ 2. Because both paralegals possess a high degree of legal experience and experience in the area of public benefits law, the proposed hourly rate of $85 is reasonable and appropriate.

*Number of Hours*

█ In determining the number of hours that will be used to calculate a fee award, a district court may only include those hours reasonably expended on the litigation. *See Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from the total hours used to calculate the final award. *Id.*

Here, the plaintiffs are requesting an award based on a total of 930.3 hours for their four attorneys and 67.3 hours for the two paralegals. The government contends that the number of hours requested is unreasonable because of the duplication of effort and the excessive time expended to perform routine tasks. Specifically, the government challenges the plaintiffs' requested hours on the grounds that: (1) Attorney Deford's participation as lead counsel was augmented by assistance provided by the Connecticut State Attorney General's office, which was also intensely involved in the litigation; (2) plaintiffs' attorneys have requested hours for all four attorneys for routine tasks; (3) the participation of Attorney Gallant at the later stages of the litigation was excessive and unnecessary; (4) a significant portion of the time expended was done in conjunction with settlement discussions in a companion case; (5) an unusually high amount of time was expended in drafting the complaint and fee petition; and (6) the time requested for paralegal services is not supported with detailed time accounts. Each of these issues is addressed below.

1. *Duplication of Effort by Connecticut State Attorney General's Office*

The government contends that the hours requested by the plaintiffs for Attorney Deford should be reduced by half to reflect the Connecticut State Attorney General's office's participation in the case. However, the government has presented no evidence to suggest that the participation of both Deford and the State Attorney General's office resulted in any unnecessary duplication of efforts. If anything, in a case as complicated—procedurally and substantively—as this one, the efforts of both the Center and the State were necessary to the efficient and able handling of the litigation. In any event, as the Center and Attorney Deford have asserted, Deford was chiefly responsible for the litigation and his work—almost 800 hours over the course of the litigation—appropriately accounts for most of the hours expended. *See* Pl. Reply Memo. (doc. # 120) at 6; Deford Dec. at ¶ 15.

2. *Use of Multiple Attorneys for Routine Tasks*

█ The government objects to reimbursement for hours expended by multiple attorneys on routine litigation tasks, like telephone conferences with one another, or

the participation of all four attorneys on conference calls with the court or opposing counsel. This argument fails. Participation by several attorneys on conference calls is often the most efficient means of communicating and of keeping each attorney apprised of developments in the case. Alternative means of updating co-counsel, including preparation and circulation of memoranda or emails summarizing matters handled by a single attorney is often more time consuming and less effective than including additional counsel at important events (e.g., court arguments, depositions) or conducting conference calls so that communications are not mixed up as information passes from one lawyer to the next.

### 3. Participation of Attorney Gallant

 The government objects to all time spent by Attorney Gallant and all time claimed by CMA attorneys for consulting with Attorney Gallant as unnecessary and duplicative. In his supplemental declaration, Attorney Deford responds:

13. As settlement discussions involving the Beneficiary Plaintiffs in this and the companion case were beginning in the spring of 2002, the three attorneys for the Beneficiary Plaintiffs asked Brad Gallant to associate as co-counsel. The purpose of this association was in part to utilize his unique knowledge of probate law and elder and disabilities law in order to gauge the impact of proposals on the class members, and in part to prevent any suggestion of a conflict of interest between counsel for the class and the class members. This latter concerns was based on the defendant's suggestion that such a conflict might exist

. . . .

Supplemental Declaration of Gill Deford (doc. # 121). In light of the facts set forth in the Supplemental Declaration, the 16.75

hours billed by Attorney Gallant on this case were wholly appropriate and reasonable.

### 4. Settlement discussions in related case

The government argues that the time of attorneys other than Deford should be cut in half to recognize that the settlement discussions held between the parties pertained to this case as well as a related case. This concern is misplaced. All plaintiffs' counsel allocated time spent on settlement negotiations by splitting that time equally between the related cases, except when a particular discussion related only to one case. Pl. Reply Memo. at 7 n.9. Accordingly, the adjustment requested by the defendant has already been made.

### 5. Time drafting complaint and fee petition

 The parties disagree about whether all of the time spent drafting and redrafting the complaint and the present fee petition was necessary and appropriate. The argument fails with respect to the fee petition. The petition is a significant pleading that required preparation and collection of extensive documentation as well as the completion of substantial legal research. The time expended on these tasks is reasonable under all of the circumstances. The defendant's argument about the time spent drafting and redrafting the complaint has more merit. Although I acknowledge that this was an important, difficult task that required time-consuming review of administrative proceedings, legal research and review of actions of United Government Services, the total amount of time ultimately spent is somewhat excessive; more than 80 hours were devoted to this task. From the total time spent in preparation of the complaint, I will cut 30 hours in order to

bring the time down to a reasonable figure.

### 6. *Time records for paralegals*

 The defendant argues that the request for reimbursement of paralegal time must be denied because it is not supported by contemporaneous time records. Although an attorney filing a fee petition must support it with contemporaneous time records specifying the nature of the work performed, *New York Ass'n of Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983), the defendant's argument nevertheless fails under the circumstances of this case. Here the plaintiffs have not claimed reimbursement of the bulk of time spent by the two paralegals on this case, precisely because detailed records are not available. *See, e.g.,* Declaration of Lara Stauning at ¶ 6 ("I put in considerable [sic] more time on this case in the weeks that followed [her September 2000 trip to Milwaukee], primarily reviewing and indexing the documents, but we are not requesting reimbursement for that time because the exact number of hours cannot be determined."). Thus, there is no need to reduce the fee request due to inadequate documentation.

The very limited claim for reimbursement of paralegal time relates to three trips taken by the paralegals in furtherance of their work on this case, and the claim for reimbursement is adequately supported by alternative documentation that provides a factual basis for the request that is as reliable as time records. The declarations of Glatz and Stauning and the supplemental declaration of Glantz adequately demonstrate that the specific hours claimed were actually spent in furtherance of work on this case. In addition, the plaintiffs have provided sufficient detail and documentation to permit the defendant to challenge the reasonableness of the hours expended and the tasks performed. Although the better practice would have been for the paralegals to keep contemporaneous time records—and had they done so the fees awarded in this case would be larger—the failure to do so under these unusual circumstances does not prevent plaintiffs from obtaining reimbursement of the very limited hours actually requested in the petition.

### *Amount Awarded*

After certain adjustments, notably including charging travel time at half the otherwise applicable billing rate, plaintiffs request attorneys' fees of $306,238.75 and paralegal and other expenses in the amount of $12,653.33. For the reasons discussed above, this request is wholly appropriate and reasonable, with the exception of 30 of the hours spent preparing the complaint. At $325 per hour, those 30 hours represent $9,750. Accordingly, plaintiffs are awarded $296,488.75 in attorneys' fees and $12,653.33 in paralegal and other expenses, for a total award of $309,142.08.

## CONCLUSION

The plaintiffs Motion For An Award Of Attorneys' Fees And Expenses (doc. # 109) is granted in substantial part. Plaintiffs are awarded a total of $309,142.08 in attorneys' fees and expenses.

It is so ordered.