**UNITED STATES of America, Plaintiff,**

**v.**

**Daniel K. SCHEINGOLD, John W. Orem, and Edward L. Trueblood, Defendants.**

**Civil No. 00–2150 (JBS).**

United States District Court, D. New Jersey.

Dec. 1, 2003.

[redacted]

John R. Crayton, Esquire, Crayton & Belknap, Moorestown, NJ, for Plaintiff.

Christopher J. Christie, United States Attorney by Louis Bizzarri, Assistant U.S. Attorney, Civil Division, Camden, NJ, and Dara B. Oliphant, Lawrence P. Blaskopf, Trial Attorneys, Tax Division, United States Department of Justice, Washington, DC, for United States.

## OPINION

SIMANDLE, District Judge.

This matter comes before the Court upon motion by defendant Daniel K. Scheingold for attorneys' fees and costs in the amount of $19,054.90 ($18,952.00 plus $102.90) pursuant to 26 U.S.C. § 7430. For the reasons stated herein, the Court will grant this application because Scheingold substantially prevailed at trial after the government rejected his pre-trial qualified offer of settlement under 26 U.S.C.

§ 7430(c)(4)(E). Further, as to the appropriate hourly rate, Scheingold's attorney has demonstrated that special factors are present, and were instrumental in achieving the victory, justifying a fee award exceeding the $125 statutory limit to the hourly amounts claimed of $185 for services from January 23, 2002 through November 30, 2002, and $195 thereafter, as discussed below.

## BACKGROUND

A number of related cases were initially brought as tax refund suits after defendant Scheingold received notice of an assessment for payroll tax liabilities of IE, Inc. ("IE") and Street Holdings Company ("SHC") on or about June 16, 1998. These responsible person assessments were made pursuant to 26 U.S.C. § 6672 for unpaid payroll tax liabilities of IE and SHC. In early 1999, defendant sent two payments to the Internal Revenue Service ("IRS"), each in the amount of $100, representing one employee's wage taxes for one of the outstanding payroll tax periods for each company. A delegate of the Secretary of the Treasury assessed against Scheingold a penalty under this statute for the last three quarters of 1995, all four quarters of 1996 and the second and third quarters of 1997 in the amount of $1,883,307.95, plus interest thereon, with regards to his involvement with IE. Furthermore, a delegate assessed an additional penalty for all four quarters of 1995 and the last quarter of 1996, in the total amount of $172,679.85, plus interest thereon, with regards to his involvement with SHC. The penalty was assessed in light of federal individual income taxes and Federal Insurance Contribution Act taxes withheld from the employees of IE and SHC, which were not paid to the United States when due.

Defendant Scheingold subsequently filed refund claims with the IRS for the $100 payments. On or about August 18, 1999, the IRS sent defendant a formal notice denying the claims. In response, the instant cases were filed on May 4, 2000. The United States then filed answers to Scheingold's complaints, counterclaimed, alleging that Scheingold was a responsible officer as defined by 26 U.S.C. § 6672 for both companies and therefore responsible for the liabilities, and filed third-party complaints against two other alleged responsible officers of the corporations, Edward Trueblood ("Trueblood") and John Orem ("Orem"). The cases were consolidated for all purposes, including entry of judgment.

On April 27, 2001, defendant submitted an offer to settle the case for $10,000, payable over 40 months at $250 per month. Government counsel acknowledged this offer by letter dated May 10, 2001, but ultimately rejected it on August 29, 2001. On January 23, 2002, defendant submitted a similar settlement offer, designated as a "qualified offer" for purposes of 26 U.S.C. § 7430(g), to settle the case for a lump-sum payment of $10,000. This offer was acknowledged as such by government counsel, and later rejected by letter dated March 4, 2002.

On September 13, 2002, the Court dismissed Scheingold's complaints with prejudice at Scheingold's request. On November 7, 2002, Default was entered against Orem, and on January 30, 2003, the United States moved for a Default Judgment against Orem.

These cases proceeded to trial on the United States's counterclaim against Scheingold and its third-party complaint against Trueblood beginning on February 3, 2003. The jury found that Scheingold was not a responsible officer of either company as defined by 26 U.S.C. § 6672 and

absolved him of all liabilities incurred by those companies, while finding Trueblood liable for certain periods. The verdict of the jury has now become final by Order of Court. On March 3, 2003, Scheingold filed the present Application for Allowance of Attorneys' Fees and Costs pursuant to 26 U.S.C. § 7430.

## DISCUSSION

*Standard for Attorneys' Fees and Costs in Federal Tax Cases*

In an action for the determination, collection or refund of a tax, interest or penalties thereon, in which the IRS is a party to the action, Section 7430 of the Internal Revenue Code provides for the award of litigation costs, including attorneys' fees. That section provides:

> (a) **In general.**—In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—
>
> > (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and
> >
> > (2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a). This general section, however, must be read together with 26 U.S.C. § 7430(c)(1)(B)(iii), which imposes a ceiling on the hourly rate that may be awarded at $125 per hour, unless the court finds that a higher rate is justified.

As a general matter, the award of fees and costs under the statute is within the discretion of the court. "Congress has given the court discretion in awarding attorney's fees and costs to a prevailing par-

ty in a tax refund action." *Fitzgerald v. United States,* 789 F.Supp. 177, 178 (E.D.Pa.1992).

*Plaintiff's Entitlement to a Fee Award*

To be entitled to attorneys' fees, the moving party must also be a prevailing party. Section 7430 defines a prevailing party as a party which has substantially prevailed with respect to the amount in controversy, or with respect to the most significant issue or set of issues presented. 26 U.S.C. § 7430(c)(4)(A). In this case, the jury determined that defendant Scheingold was not a responsible officer of the companies during the periods at issue. While this would tend to lead to the inference that Scheingold is a prevailing party, the Government argues that this does not automatically entitle the defendant to an award of fees and costs.

Instead, the United States points to Section 7430(c)(4)(B) of the Code, which provides an exception to the general rule. Under that section, "a party shall not be treated as the prevailing party in a proceeding ... if the United States establishes that the position of the United States in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B). As the Third Circuit has held, "in order to demonstrate that the position taken by the United States was not 'substantially justified,' [the alleged prevailing party has] the burden of showing that the government's position was not 'justified to a degree that could satisfy a reasonable person' or had no 'reasonable basis both in law and fact....'" *Nicholson v. Comm'r of Internal Revenue Serv.,* 60 F.3d 1020, 1025–26 (3d Cir.1995)(quoting *Lennox v. Comm'r,* 998 F.2d 244, 248 (5th Cir.1993)).

■ Here, throughout the course of the litigation, the positions taken by the Government were substantially justified. Though the jury's verdict ultimately exon-

erated him from liability as a responsible person under 26 U.S.C. § 6672, while finding his co-defendant liable, the evidence produced at trial against Scheingold was rather strong. Scheingold was a corporate officer, had a substantial role in managing the corporations' finances, and served in various capacities during important periods of time. Thus, the Government's position at trial was founded in both law and fact.

■ This Court must next consider, however, whether Scheingold made a qualifying offer under 26 U.S.C. § 7430(c)(4)(E), which provides special rules where the judgment is less than the taxpayer's offer. That section provides:

> (i) **In general.**—A party to a court proceeding meeting the requirements of subparagraph (A)(ii) shall be treated as the prevailing party if the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party under subsection (g).

26 U.S.C. § 7430(c)(4)(E). Under this section, it is clear that Scheingold qualifies as a prevailing party and is thus entitled to attorneys' fees. Scheingold offered essentially more money than he has. Even though his offer was only for $10,000, the fact is that he has no real income or assets from which to satisfy a larger judgment. He derived no personal gain from the corporations' failure to pay taxes, and is currently employed by Circuit City as a sales clerk. Under the circumstances, therefore, Scheingold made a qualifying offer.

As Scheingold prevailed at trial, his liability is substantially less than his offer and thus qualifies under § 7430(c)(4)(E). A fee award is thus proper for the period of time after the date of his last qualified offer.

*Attorneys' Fee Award*

Pursuant to 26 U.S.C. § 7430(c)(1)(B)(iii), an hourly rate in excess of $125 is justified where the Court finds that a special factor, such as the limited availability of qualified attorneys, exists. In the instant case, applicant has submitted fees billed at an hourly rate of $185 for services rendered from January 23, 2002 through November 30, 2002 and $195 thereafter.

In evaluating alleged special factors under Section 7430(c)(1)(B)(iii), courts have traditionally looked to similar provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412(d). In *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court interpreted the special factor language of the EAJA and concluded that

> the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.

*Id.* at 572, 108 S.Ct. 2541.

There is presently a division among the federal circuit courts on the issue of interpreting the Supreme Court's holding in *Pierce.* The Seventh, Ninth and Eleventh Circuits have interpreted *Pierce* to allow an enhancement in situations where the attorneys have specialized expertise in a particular area of law. *Raines v. Shalala,* 44 F.3d 1355, 1361 (7th Cir.1995) (interpreting *Pierce* to find that "an identifiable practice specialty not easily acquired by a

reasonably competent attorney" can be considered a special factor warranting fee enhancement); *Pirus v. Bowen,* 869 F.2d 536 (9th Cir.1989)(holding that a fee enhancement was available for specialized expertise in social security law); *Jean v. Nelson,* 863 F.2d 759, 774 (11th Cir.1988) (concluding that special expertise in the field of immigration law may be considered a special factor in favor of fee adjustment). In contrast, the D.C., Fourth, and Fifth Circuits have construed *Pierce* narrowly to make fee enhancement "available only for lawyers whose specialty 'requir[es] technical or other education outside the field of American law.'" *F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 598 (D.C.Cir.1996). *See also Hyatt v. Commissioner,* 315 F.3d 239 (4th Cir.2002); *Estate of Cervin v. Commissioner,* 200 F.3d 351 (5th Cir. 2000). The Third Circuit has been largely quiet.

■ This Court is inclined to agree with the interpretation of *Pierce* embraced by the Seventh, Ninth, and Eleventh Circuits. Under *Pierce,* special factors that would trigger fee enhancement included "identifiable practice specialt[ies]" and expertise. *Pierce,* 487 U.S. at 572, 108 S.Ct. 2541. As Judge Underhill of the District of Connecticut recognized in his recent opinion granting enhanced fees and recognizing Medicare expertise, "[a]lthough patent law was the only specialty identified by the Court, there is no reason to believe the Court intended the universe of such specialties to be limited exclusively to patent law." *Connecticut State Department of Social Services v. Tommy Thompson,* 289 F.Supp.2d 198, 204 (D.Conn.2003).

■ In the instant case, Scheingold's attorney, John R. Crayton, Esquire, had expertise in tax investigation and assessment, tax litigation and a background as a Special Agent for the IRS. The applicant argues that the issues involved in this case

regarding responsible officer assessments are complex and require knowledge of the IRS Procedure regarding these assessments and the process for litigating refund actions in District Court. Mr. Crayton's expertise in IRS assessment and collection practices played a prominent role in defending this case, beyond his skills as a courtroom litigator. Scheingold's defense hinged largely on the theory that the IRS cast too broad a net in assessing the 100–percent penalty, since Scheingold, unlike the owner (Orem) and the top responsible officer and advisor (Trueblood) bore little responsibility, if any, for actual management of financial affairs despite his title. At several important junctures, he spoke authoritatively on such matters which were unknown to co-defense counsel and even to counsel for the United States. This Court was continually impressed with Mr. Crayton's intimate familiarity with the applicable IRS statutes, regulations, policies and procedures pertaining to responsible person tax liability. Those special insights played no small role in Scheingold's victory in this case. Mr Crayton, in the words of the Supreme Court in *Pierce,* has a "distinctive knowledge [and] specialized skill needful for the litigation in question" consisting of his knowledge and experience as a former IRS agent and attorney concerning the assessment and enforcement of responsible person tax liabilities, as well as the trial of such a case in federal court, extending beyond even "an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce,* 487 U.S. at 572, 108 S.Ct. 2541. In the Court's opinion, therefore, this expertise justifies approval of a higher hourly rate. *See U.S. v. Sam Ellis Stores, Inc.,* 768 F.Supp. 286 (S.D.Cal.1991) (where court approved $180/hr. rate for attorney with expertise in federal taxation and experience as a U.S. Attorney in Tax Division

and CPA). The rate itself, at $185 and then $195, is reasonable and compares very favorably with rates for experienced practitioners in this area having Mr. Crayton's experience, which lie typically in a range of $225 to $325. The Court also finds, and the United States does not dispute, that the number of hours expended by counsel since January 23, 2002 were properly documented, reasonable and necessary in achieving this favorable result after a nine-day trial. Indeed, the hours expended were extremely efficient, which is another mark of Mr. Crayton's special expertise in this complicated area. Thus, the attorneys' fee request is well-justified and is approved in its entirety.

*Costs*

This District has held that expenses such as electronic research, postage, copies, telephone long distance charges and transportation costs are "reasonable litigation costs" as defined by 26 U.S.C. § 7430(c)(1)(A). *Wade v. U.S.*, 865 F.Supp. 216 (1994). In the instant case, applicant has fully detailed all costs incurred in the litigation of these matters since the January 23, 2002 offer date. Such expenses are reasonable and thus, will also be awarded to applicant.

## CONCLUSION

For the reasons discussed herein, the Court awards defendant attorneys' fees in the amount of $19,054.90, representing the reasonable litigation fees and costs incurred since the date of defendant Scheingold's qualified offer, January 23, 2002. The accompanying Order is entered.

## *ORDER*

This matter comes before the Court upon the motion of defendant Daniel K. Scheingold for an award of attorneys' fees and litigation costs, [Docket Item No. 72–

1]; and the Court having considered the parties' submissions; and for the reasons expressed in the Opinion of today's date; and for good cause shown;

**IT IS** this 1st day of December, 2003 hereby

**ORDERED** that plaintiff United States of America pay defendant Daniel K. Scheingold $19,054.90 in attorneys' fees and costs.