## Petition of DELGADO.
### No. 7628–M.

District Court, N. D. California, S. D.
Oct. 11, 1944.

Daniel H. Lyons, Naturalization Examiner, of San Francisco, Cal., for the government.

No attorney for applicant.

GOODMAN, District Judge.

Applicant, a native of the Philippines, seeks United States citizenship, under the provisions of Section 701 of the Nationality Act of 1940, as amended, 50 U.S.C.A. Appendix § 640. The Naturalization service recommends applicant for naturalization. The United States Coast Guard certifies that he is now "serving honorably" as a "temporary member" of the United States Coast Guard Reserve, 14 U.S.C.A. § 307.

The question for decision is: Does the applicant, "serving honorably" as a "temporary member" of the Coast Guard Reserve, qualify for citizenship?

By § 701 of the Nationality Act of 1940 as amended, resident aliens, regardless of age, who prior to the adoption of the amendment served or thereafter serve honorably in the military or naval forces of the United States during the present war, may be naturalized without the formalities and conditions required of civilian aliens.

On July 11, 1941, 55 Stat. 585, became law and provided: "The Coast Guard, which shall be a military service and constitute a branch of the land and naval forces of the United States at all times and shall operate under the Treasury Department in time of peace and operate as a part of the Navy, subject to the orders of the Secretary of the Navy, in time of war or when the President shall so direct." 14 U.S.C.A. § 1. On November 1, 1941, by Executive Order No. 8929, 14 U.S.C.A. § 1 note (6 Fed.Reg. 5581), the President ordered "that the Coast Guard shall from this date, until further orders, operate as a part of the Navy, subject to the orders of the Secretary of the Navy."

By the Act of February 19, 1941, as amended November 23, 1942, 56 Stat. 1021, 14 U.S.C.A. § 301, it was provided:

"§ 301. Establishment and purpose

"There is hereby created and established a United States Coast Guard Reserve

(hereinafter referred to as the 'Reserve'), the purpose of which is to provide a trained force of officers and enlisted personnel which, added to regular personnel of the Coast Guard, will be adequate to enable that service to perform such extraordinary duties as may be necessitated by emergency conditions."

By § 302, the Reserve is declared to be a "component part of the Coast Guard" and its members "obligate themselves to serve * * * in time of war or during any period of national emergency declared by the President to exist."

§ 304, which has to do with the nature and administration of the "Reserve," refers to it as "a military organization administered by the Commandant."

Temporary membership in the Reserve was provided by the Act of February 19, 1941, as amended by the amendments of June 6, 1942, October 26, 1942, and November 23, 1942, 14 U.S.C.A. § 307, which reads as follows:

"§ 307. Same; temporary membership; eligibility; compensation

"The Commandant, with the approval of the Secretary of the Treasury or of the Secretary of the Navy, while the Coast Guard is operating as a part of the Navy, is hereby authorized to enroll as temporary members of the Reserve, for duty under such conditions as he may prescribe, including but not limited to part-time and intermittent active duty with or without pay, and without regard to age, members of the Auxiliary, such officers and members of the crew of any motorboat or yacht placed at the disposal of the Coast Guard, and such persons (including government employees without pay other than the compensation of their civilian positions) who by reason of their special training and experience are deemed by the Commandant to be qualified for such duty, as are citizens of the United States or of its Territories or possessions, including the Philippine Islands, to define their powers and duties, and to confer upon them, appropriate to their qualifications and experience, the same ranks, grades, and ratings as are provided for the personnel of the regular Coast Guard Reserve. When performing active duty with pay, as herein authorized, temporary members of the Reserve shall be entitled to receive the pay and allowances of their respective ranks, grades, or ratings, as may be authorized for members of the regular Coast Guard Reserve."

The statutes make it abundantly clear that temporary members of the Coast Guard Reserve are members of the naval forces of the United States. See Brown, Boatswain's Mate, v. Cain, D.C., 56 F.Supp. 56.

Applicant, as a temporary member of the Reserve, performs duties as a part of what is called the "Volunteer Port Security Force" (V.P.S.F.), functioning in and about the San Francisco Bay area. The V.P.S.F. acts as guard or watch over specified areas, military or naval material and aboard ships. Prior to the organization of the V.P.S.F. regular members of the Coast Guard performed these duties, but now have been relieved and made available for active sea duty. Applicant has been, during most of his period of service, a Watch Stander aboard ship. He is a post office clerk, aged thirty-nine years and serves as a temporary member of the Reserve (seaman, first class) without pay. He is subject to the orders of the Commandant while on duty and cannot resign for the duration. He takes an oath that he will bear true faith and allegiance to the United States and that he will obey the orders of the President and his superior officers—all according to the laws and regulations of the United States Coast Guard. In the performance of his duties, he is subject to all the hazards and risks to which, while on duty, a regularly enrolled Coast Guard Seaman would be exposed.

It is true that applicant is, as are others similarly serving in the V.P.S.F., only obligated to stand watches of a minimum of 12 hours weekly. But section 701 of the Nationality Act, as amended, establishes no prerequisites as to duration of service. Nor does it declare itself as to kind or character of service, except that it be honorable. A regular Coast Guardsman, serving honorably for one day or one week, is eligible for citizenship under section 701 upon compliance with the applicable naturalization requirements. The part time service of the temporary reservist equivalently qualifies him.

During the present emergency aliens as a class have been eligible for service in the army and navy, if found acceptable by the military or naval authorities. By statute, however, only citizens of the United States or of its Territories or possessions includ-

462

ing the Philippine Islands, are eligible to serve in the Coast Guard Reserve, 14 U.S. C.A. § 307. Furthermore, prior to the amendment of October 26, 1942, the statute had excluded citizens of the Philippines from service in the Reserve. The imminence of Philippine independence was the motivating cause of such exclusion. Report of the Committee on the Merchant Marine and Fisheries, No. 2491, 77th Cong. 2nd Sess.

Thus it appears that only a limited and special class of non-citizens are eligible for service in the Coast Guard Reserve, to-wit, citizens of Territories and possessions of the United States, including the Philippine Islands.

Obviously the rationale of this limitation is the belief that those who are natives of our Territories or possessions, and have come into contact with our democratic ideals, may be presumed to have a high degree of loyalty to this nation. It is therefore fitting that an applicant who can satisfy the high eligibility standards of the Coast Guard Reserve should qualify for citizenship under § 701 of the Nationality Act, as amended.

It was clearly the intent of Congress in adopting § 701 to follow the historic course of granting the boon of citizenship to loyal aliens engaging to help defend this country. The House Committee reporting H. R. 1710 (which became § 701) said: "It is a matter of historic record that the Government of the United States, as an encouragement to loyal aliens engaged in the defense of this country through service in the armed forces, has in past years, relieved them from some of the burdensome requirements of the general naturalization laws." House Misc. Rep. 10661, page 3. And again in the same report, it is stated: "This proposed legislation proceeds upon the principle that non-citizens who are ready and willing to sacrifice their lives in the maintenance of this democratic government are deserving of the high gift of United States citizenship when vouched for by responsible witnesses as loyal and of good character and shown by government records as serving honorably."

In my opinion, the applicant is serving honorably in the naval forces of the United States, is properly vouched for as provided by law, and is therefore entitled to citizenship. He may be admitted upon taking the statutory oath.