**Petition of YOU LO CHEN.**
**No. 1500–P–295185.**

District Court, D. Massachusetts.
Sept. 19, 1947.

On Rehearing Nov. 18, 1947.

---

620

John H. Fletcher Calver, of Boston, Mass., for petitioner.

Maxwell Lambe, Chief Nationality Section, U. S. Dept. of Justice, Immigration and Naturalization Service, of Boston, Mass., for the Government.

SWEENEY, District Judge.

The above petition for naturalization is allowed on the authority of Petition of Delgado, D.C., 57 F.Supp. 460, and Petition of Agustin, D.C., 62 F.Supp. 832, 835. As stated in the latter case: " 'This proposed legislation proceeds upon the principle that non-citizens who are ready and willing to sacrifice their lives in the maintenance of this democratic government are deserving of the high gift of United States citizenship when vouched for by responsible witnesses as loyal and of good character and shown by government records as serving honorably.' "

This petitioner should not be denied citizenship because he technically did not have "service" in the true military sense of the word. His history shows that he did everything possible, not only to get into active service, but into active service in Burma. I think that he is covered by the statute and is entitled to its benefits.

Upon taking the required oath he is to be admitted to citizenship.

### Opinion.

A rehearing of the petition for naturalization filed herein was held at the request of the Government. From the evidence in the case, the following findings of fact are made: The petitioner is of Chinese descent, born outside of the United States. In 1936 he came to this country and was admitted for a period of two years as a visiting student. He entered the University of Illinois and studied there for two years, during which time he took the ROTC training, attending the summer ROTC camp at Camp Custer, Michigan, during the summer of 1937, and at Camp McCoy, Wisconsin, during the summer of 1938. Various requests for a continuance to stay in this country were granted, and he was therefore here legally at the time he filed his petition for naturalization. He seeks to be admitted under the provisions of Section 701 of the Nationality Act of 1940, as amended, 50 U.S. C.A.Appendix, § 640 which permits the naturalization of " * * * any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and who, having been lawfully admitted to the United States, including its Territories and possessions, shall have been at the time of his enlistment or induction a resident thereof, * * *" without the formalities and conditions required of civilian aliens.

The foregoing facts, with regard to the petitioner's membership in the ROTC, cannot be used as the basis for the application of this statute, and they have been set out as indicative of a possible loyalty of this petitioner to the United States. After the declaration of war and early in 1942,

this petitioner made application to the War Department to be commissioned in the United States Army, and he asked for service, preferably in Burma, because he spoke three Chinese dialects fluently, and had a good command of the English language. At least two Congressmen from this Commonwealth and a United States Senator interceded with the War Department officials in an attempt to have him placed. The Army apparently looked upon his application favorably, and had examined him physically at Ft. Myer, Virginia. He was apparently acceptable physically for there is no evidence to the contrary. During a period commencing March 19, 1942, and continuing at least until May, 3 1942 (these dates being obtained from the Immunization Register of the General Dispensary, United States Army) he was given smallpox vaccine, triple typhoid vaccine, tetanus toxoid, yellow fever vaccine, and possibly some other inoculations. I find as a fact that the petitioner did everything possible to actually enter the armed forces of the United States. On September 18, 1942, the War Department mailed a post card to this petitioner which read as follows:

"This is to inform you that your generous offer of service has been carefully considered and that, at the present time, there is no appropriate position to which you may be assigned.

"The questionnaire which you recently submitted has been analyzed and classified and your qualifications permanently recorded so as to be readily available in the future to any interested agency of the War Department.

"It is impossible to forecast the extent to which the War Department may ultimately use the thousands who have volunteered their services. If it should develop that you can be used, you will be notified without further request on your part. This notice is not to be construed as meaning that your offer of service has been permanently rejected.

"I want again to express the appreciation of the War Department for your offer of assistance in the war effort."

He was never called into the actual armed forces of the United States.

The question now arises whether the activities of the petitioner in conjunction with this attempted enlistment are within the meaning of the word "served" as used in the statute. This petitioner is subject to deportation if a too narrow construction is placed upon the words "serve" or "service". Deportation can be the equivalent of banishment or exile. See Bridges v. Wixon, 326 U.S. 135, 147, 65 S.Ct. 1443, 89 L.Ed. 2103. I think that to construe properly the intent of Congress we are entitled to look into the Committee Reports. It was clearly the intent of Congress in adopting § 701 to follow the historic course of granting the boon of citizenship to loyal aliens engaging to help defend this country. The House Committee reporting H. R. 1710 (which became § 701) said: "It is a matter of historic record that the Government of the United States, as an encouragement to loyal aliens engaged in the defense of this country through service in the armed forces, has in past years, relieved them from some of the burdensome requirements of the general naturalization laws", and referring to this Bill it says, "This proposed legislation proceeds upon the principle that non-citizens who are ready and willing to sacrifice their lives in the maintenance of this democratic government are deserving of the high gift of United States citizenship when vouched for by responsible witnesses as loyal and of good character and shown by government records as serving honorably." Certainly this petitioner was within that category, and the quotation just given seems to fit him squarely. I am inclined to agree with the interpretation which seems to have guided the decision in Petition of Delgado, D.C., 57 F.Supp. 460.

### Conclusion of Law.

I conclude and rule that the activities of this petitioner, as set forth in the above findings of fact, bring him within the statute, and that he is entitled to be admitted to citizenship.