**UNITED STATES v. PETER YOU LO CHEN.**

**No. 4369.**

United States Court of Appeals
First Circuit.

Oct. 29, 1948.

---

[1] Petition for review, dismissed.

W. Arthur Garrity, Jr., Asst. U. S. Atty., of Boston, Mass., (William T. McCarthy, U. S. Atty., of Boston, Mass., on the brief), for appellant.

John H. Fletcher Calver, of Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and GOODRICH (by special assignment), and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

The United States is here appealing from an order admitting appellee Peter You Lo Chen to citizenship under the simplified and accelerated procedure of § 701 of the Nationality Act of 1940, as amended, applicable to "any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States" during World War II.[1] The case·in the court below is reported in Petition of You Lo Chen, 1947, 74 F.Supp. 619.

Appellee came to this country from China in 1936, having been lawfully admitted as a visiting student under a non-quota immigrant visa pursuant to §§ 4(e) and 8 of the Immigration Act of 1924, 43 Stat. 153, 8 U.S.C.A. §§ 204(e), 208, which visa apparently has been extended from time to time. He took two years of training in the Reserve Officers' Training Corps at the University of Illinois (1936–1938).

On March 20, 1942, Chen made application for a commission in the Army Air Corps, suggesting his availability for service in the Burma theatre because of his proficiency in the Chinese language. He was given a physical examination at Fort Myer, Virginia, and the report of the examining officers states that the applicant met the physical requirements. During the next six weeks (as appears from the Immunization Register, General Dispensary, U. S. Army, Washington, D. C.), he was given smallpox vaccine, triple typhoid vaccine, tetanus toxoid, and yellow·fever vaccine.

---

[1] Section 701 was added to the Nationality Act by § 1001 of the Second War Powers Act, 1942, 56 Stat. 182. The section, as since amended, 58 Stat. 886, 59 Stat. 658, reads in part as follows: "Sec. 701. Notwithstanding the provisions of sections 303 and 326 of this Act, any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and Who shall have been at the time of his enlistment or induction a resident thereof and who (a) was lawfully admitted into the United States, including its Territories and possessions, * * * may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention, * * * and no period of residence within the United States or any State shall be required; (2) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner; (3) the petitioner shall not be required to speak the English language, sign his petition in his own handwriting, or meet any educational test; and (4) no fee shall be charged or collected for making, filing, or docketing the petition for naturalization, or for the final hearing thereon, or for the certification of naturalization, if issued: *Provided, however,* That * * * (2) the service of the petitioner in the military or naval forces of the United States shall be proved by affidavits, forming part of the petition, of at least two citizens of the United States, members or former members during the present war of the· military or naval forces of the noncommissioned or warrant officer grade or higher * * *, or by a duly authenticated copy of the record of the executive department having custody of the record of petitioner's service, showing that the petitioner is or was during the present war a member serving honorably in such armed forces, and (3) the petition shall be filed not later than December 31, 1946." 8 U.S.C.A. § 1001.

Shortly thereafter he received a communication from the Adjutant General expressing appreciation "for your offer of assistance in the war effort", but stating that "at the present time, there is no appropriate position to which you may be assigned"; and further stating that if it should develop "that you can be used, you will be notified without further request on your part. This notice is not to be construed as meaning that your offer of service has been permanently rejected." No commission was ever issued to Chen, nor was he ever sworn into the military service of the United States. From June, 1942, up to the time of the filing of his petition for naturalization on December 30, 1946, he was employed principally as a taxi driver.

Section 701 of the Nationality Act requires that the service of the alien in the military or naval forces of the United States shall be proved by affidavits, forming part of the petition, of at least two citizens of the United States, members of the Armed Forces during World War II; or by a duly authenticated copy of the departmental records. Chen's application for naturalization was not accompanied by such affidavits. Nor do the War Department records submitted prove his service in the Armed Forces. They consisted of copies of Chen's application for a commission, the classification questionnaire he filled out, the report of his physical examination at Fort Myer, and his Immunization Register. The record contains a letter from the Adjutant General to counsel for appellee, dated October 13, 1947, stating that the War Department records in question "do not constitute evidence of service as a member of the Army of the United States"; and stating further that "an Immunization Register is not a legal instrument of appointment and therefore does not in any way indicate an appointment in the Air Corps." The letter further explained that it was the practice of the Army to administer immunizations as a matter of courtesy to persons who are not members of the Army of the United States, including "dependents of military personnel, civilians accompanying the Armed Forces, or traveling to or in a military controlled area, applicants for service as members of the Armed Forces and many

other categories." Another letter from the Adjutant General, dated July 24, 1947, addressed to appellee, stated that "application was made by you for commission in the Army of the United States in 1942, however, the records of this office do not show that appointment was effected or that you have ever served in any capacity as a member of the Army of the United States."

Appellee argues that the district court in effect found as a fact that appellee had "served" in the Armed Forces during World War II, and that such finding being not "clearly erroneous" must be accepted on appeal. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. But the district court made no such finding of fact, and indeed the facts are not in dispute. In its memorandum opinion, the court below stated [74 F.Supp. 621]: "I find as a fact that the petitioner did everything possible to actually enter the armed forces of the United States"—which fact of course is altogether to appellee's credit. Later in its opinion the court concluded as a matter of law that appellee's "attempted enlistment" —as the court called it—came within the meaning of the word "served" as used in § 701.

With this conclusion we cannot agree, despite our reluctance to reverse in a case of this sort. Cf. Dunn v. Commissioner of Civil Service, 1933, 281 Mass. 376, 380, 183 N.E. 889, 87 A.L.R. 998; Ruddock v. Detroit Life Insurance Co., 1920, 209 Mich. 638, 177 N.W. 242.

The court below has interpreted the statute as though it read "served or offered to serve". It may be doubted whether resort could be had to legislative history to establish so free an interpretation of the statutory language; but at any rate we have found nothing in the legislative history of § 701 to indicate that such was the legislative intent. Here appellee's offer to serve was not accepted. His civilian status remained unchanged. He never became subject to military jurisdiction and to the Articles of War. His submission to the various immunization procedures was not under compulsion of a military order which he could not lawfully disobey, but was entirely voluntary on his part, so that

he might be in readiness for overseas service in the event that his application for a commission should be granted by the War Department. Section 701 does not prescribe any particular length of service, nor require that it be combatant, or overseas, service. It is only required that the alien shall have served honorably. But there can be no military or naval service to be characterized as honorable, or otherwise, until the alien, by induction or enlistment, shall have become a member of one of the armed services of the United States.

Support for appellee's case is not to be found either in Petition of Delgado, D.C.N.D.Cal.1944, 57 F.Supp. 460, or in Petition of Agustin, D.C.N.D.Cal.1945, 62 F.Supp. 832.

In the former case, Delgado had been sworn in as a "temporary member" of the United States Coast Guard Reserve, a category provided for by the Coast Guard Auxiliary and Reserve Act of 1941, as amended, 14 U.S.C.A. § 307. The Coast Guard certified, in support of Delgado's petition for naturalization, that the applicant was then "serving honorably" as a temporary member of the Coast Guard, in the rank of seaman, first class, without pay. After examination of the applicable statutes, the court concluded that "temporary members of the Coast Guard Reserve are members of the naval forces of the United States", and that Delgado was therefore eligible to be admitted to citizenship under § 701 of the Nationality Act.

In the Agustin case, supra, the applicant for naturalization was a Filipino who had organized a guerrilla unit during the war against Japan. The oath of allegiance had been administered to him in 1942 by an American army officer who had taken refuge in his camp. Later his guerrilla unit was formally recognized by the Commander in Chief, Southwest Pacific area, as an authorized element of the United States Army Forces in the Far East, in an order issued from the headquarters of the Sixth Army on May 16, 1945. The guerrilla unit, which became known as the "Yay Regiment", under command of Agustin with the rank of Colonel of Infantry, was attached to the 43d Division, U. S. Army, and Agustin was paid the salary and allowances of a colonel

of the U. S. Army. He rendered valient combatant service, so much so that he was awarded the Distinguished Service Cross. The court properly held that the informality of the circumstances of Agustin's enlistment did not obscure the actual fact of his honorable and distinguished service as commanding officer of a recognized element of the United States Army, and that petitioner was entitled to be admitted to citizenship. His petition was not opposed by the Naturalization Service.

The order of the District Court is reversed.