PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANDREW PETER CODY, Midshipman
First Class,

*Petitioner-Appellant,*

v.

RICHARD CATERISANO, District
Director, Baltimore District Office
U.S. Citizenship & Immigration
Service; MICHAEL AYTES, Acting
Director, U.S. Citizenship &
Immigration Service; JANET
NAPOLITANO, Secretary, U.S.
Department of Homeland Security;
ERIC H. HOLDER, JR., Attorney
General, U.S. Department of
Justice; ROD J. ROSENSTEIN, U.S.
Attorney,

*Defendants-Appellees.*

No. 09-2166

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(1:09-cv-00687-MJG)

Argued: October 28, 2010

Decided: January 13, 2011

Before TRAXLER, Chief Judge, WILKINSON, Circuit
Judge, and Bobby R. BALDOCK, Senior Circuit Judge of
the United States Court of Appeals for the Tenth Circuit,
sitting by designation.

Affirmed by published opinion. Senior Judge Baldock wrote the opinion, in which Chief Judge Traxler and Judge Wilkinson joined.

---

**COUNSEL**

**ARGUED**: Douglas J. Behr, KELLER & HECKMAN, Washington, D.C., for Appellant. Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellees. **ON BRIEF:** Mary E. Pivec, KELLER & HECKMAN, Washington, D.C., for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellees.

---

**OPINION**

BALDOCK, Senior Circuit Judge:

Petitioner Andrew Peter Cody asks us to reverse the district court's denial of his petition for attorneys' fees under the Equal Access to Justice Act, 24 U.S.C. § 2412(d)(1)(a), because the Government's position was not substantially justified or, in the alternative, to remand for the district court to explain its rationale for denying the petition. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

The facts in this case are undisputed. Petitioner, an Irish national, was nominated by the Republic of Ireland to attend the United States Naval Academy ("the Academy") in 2005. A few days after nominating him, the Irish government indicated it was unable to fund Petitioner's attendance at the Academy. Petitioner then secured private funding and attended the Academy. Because Ireland did not fund his atten-

dance, Petitioner had no obligation to serve in the Armed Forces of the Republic of Ireland after graduating from the Academy. Petitioner's situation is, apparently, unique. It seems all other foreign nationals who attend or have attended the Academy are obligated to return and serve in the armed forces of their home countries. *See* 10 U.S.C. § 6957(a)(3) (providing that when the Secretary of the Navy permits foreign nationals to attend the Academy, the Secretary "shall give a priority to persons who have a national service obligation to their countries upon graduation from the Academy.").

By all accounts, Petitioner was a model midshipman who served honorably and received many awards. Wishing to become a citizen of the United States so he could serve as a commissioned officer in the United States Navy after graduation in May 2009, Petitioner filed an N-400 application for naturalization in March 2008. He claimed eligibility for citizenship under Section 329 of the Immigration and Nationality Act, 8 U.S.C. § 1440, which provides, in relevant part:

> Any person who, while an alien or a noncitizen national of the United States, has served honorably . . . in an active-duty status in the . . . naval forces of the United States . . . during any . . . period which the President by Executive order shall designate as a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force . . . may be naturalized as provided in this section if (1) at the time of enlistment . . . such person shall have been in the United States . . . . The executive department under which such person served shall determine whether persons have served honorably in an active-duty status.

*Id.* § 1440(a). On July 3, 2002, President George W. Bush issued an executive order declaring the period beginning on September 11, 2001, to be a period in which the Armed

Forces of the United States were engaged in armed conflict with a hostile foreign force. Exec. Order No. 13269, 3 C.F.R. 241 (2003), *reprinted in* 8 U.S.C. § 1440 app. at 415 (2006). That period of hostilities remains ongoing.

As proof of his eligibility under Section 329, Petitioner executed a Form N-426. On this form, Assistant Registrar Barbara S. Meeks certified that Petitioner entered active duty at the Academy on June 25, 2005. Joint Appendix (J.A.) at 19–20. In April 2008, United States Citizenship and Immigration Services (USCIS) requested another Form N-426, explaining that the one initially submitted failed to state whether Petitioner was serving honorably. J.A. at 95. Accordingly, Meeks promptly completed another Form N-426, certifying that Petitioner was serving honorably. J.A. at 134–135.

Petitioner appeared for his naturalization exam in August 2008. Though he passed the tests for English and United States history and government, Petitioner was told a decision could not yet be made about his application. J.A. at 119. In December 2008, USCIS issued a notice of continuance and requested additional documentation confirming Petitioner's active duty status. In January 2009, Petitioner provided his military service contract. This contract, countersigned by the Navy, evidenced Petitioner's commitment to serve as a commissioned naval officer upon graduation. Petitioner also provided a letter from Captain C. N. Morin, Deputy Assistant Judge Advocate General, indicating his office's legal opinion that "attendance at the U.S. Naval Academy constitutes 'active duty' service" and "the N-426 certification of 'active duty' status is conclusive evidence of such service." J.A. at 108.

With no action on his application forthcoming, in March 2009, Petitioner filed the underlying immigration action against Defendants Richard Caterisano, Michael Aytes, Janet Napolitano, Eric H. Holder, Jr., and Rod J. Rosenstein (col-

lectively "the Government") pursuant to 8 U.S.C. § 1447, which provides in relevant part:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

*Id.* § 1447(b). As the district court noted, both parties agree that USCIS did not make a determination regarding Petitioner's application before the 120-day period expired.

Shortly after the complaint was filed, the Government moved to remand the action to USCIS. Petitioner moved for summary judgment. Two days before the Government filed its cross-motion for summary judgment, it obtained another Form N-426. This form, certified by Captain K. L. Fischer-Anderson, Staff Judge Advocate to the Superintendent of the Academy, stated: "Applicant never entered onto active duty with U.S. Navy." J.A. at 250. The Government also included Fischer-Anderson's affidavit stating that Meeks committed an administrative error when she certified that Petitioner had served on active duty based on his attendance at the Academy. J.A. at 247. In the affidavit, Fischer-Anderson also stated: "[T]he USNA hereby rescinds and nullifies the previously-signed Form N-426." J.A. at 247–48.

The Government contended the later Form N-426 was controlling on the question of Petitioner's active duty status, but the court disagreed and concluded that because the Navy issued conflicting Forms N-426, it would make an independent determination of Petitioner's active duty status. Despite

the Government's concerns that certifying Petitioner as serving on active duty at the Academy would create a precedent applicable to other foreign national midshipmen, the district court proceeded to evaluate Petitioner's status. The court reasoned that Petitioner "has done everything required of midshipmen who are United States citizens and has served honorably . . . ; he has received certifications, other letters of support, and a legal opinion documenting his active-duty status"; and he has "been 'constructively inducted' into active-duty in the Navy based on his rank of 'midshipman' and his performing the duties of a service member." J.A. at 391. The court rejected the Government's contention that Petitioner was never inducted into the Navy because he took the Oath of Compliance administered to foreign nationals rather than the Oath of Office, explaining it did not think the form of oath was critical and declining to address the effect of either oath. J.A. at 391 n.4. The district court concluded Petitioner was eligible for naturalization, ordered Petitioner to appear before it to take his oath of allegiance, and ordered USCIS to issue a Form N-550 Certificate of Citizenship to Petitioner. J.A. at 394–96. The Government did not appeal.

Petitioner then moved for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), which provides in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* § 2412(d)(1)(A). The "'position of the United States' means, in addition to the position taken by the United States

in the civil action, the action or failure to act by the agency upon which the civil action is based." *Id.* § 2412(d)(1)(D)(2)(D). Petitioner argued the Government's position was not substantially justified because USCIS was required to adjudicate his application within 120 days under 8 U.S.C. § 1447(b) and 8 C.F.R. § 310.5(a). Additionally, Petitioner argued, USCIS was obligated to accept the Navy's Form N-426 certification as conclusive evidence that he served on active-duty status. Thus, after receiving a properly executed Form N-426, USCIS "had no justifiable basis in refusing to act." J.A. at 409.

Without waiting for a response from the Government, the district court denied Petitioner's motion for EAJA fees. In a three-page order, the court noted that Petitioner had prevailed and requested a reasonable, perhaps even low, fee but concluded:

> [T]he instant case presents a unique, unlikely to be repeated, set of circumstances. The Court does not need to require government's counsel to file a response to the instant motion to establish what was made clear in the Court's deliberations. There were reasonable arguments on both sides of outcome determinative issues. The court held for Petitioner but recognizes that other judges could reasonably disagree with its decision.

J.A. at 442 (internal quotations omitted). Petitioner appealed this order, arguing the Government's position was not substantially justified and the district court failed to sufficiently explain its reasoning in denying Petitioner's request for EAJA fees.

## II.

We first consider whether the Government's position was substantially justified. We review the district court's decision

to deny Petitioner's request for EAJA fees for an abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 559 (1988). To determine whether the Government's position was substantially justified, we consider "all aspects of the civil action." *Commissioner v. Jean*, 496 U.S. 154, 161 (1990). As we said in *Roanoke River Basin Ass'n v. Hudson*, 991 F.3d 132 (4th Cir. 1993):

> [W]e look beyond the issue on which the petitioner prevailed to determine, from the totality of the circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation. In doing so, it is appropriate to consider the reasonable overall objectives of the government and the extent to which the alleged governmental misconduct departed from them.

*Id.* at 139. The Government's position is substantially justified if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. Nor must the Government win to prove its position substantially justified; "it can be substantially justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n.2. Thus, we consider the Government's position both before and during litigation to evaluate whether it was substantially justified.

On appeal, Petitioner contends the Government was required, by statute and regulation, to accept the Navy's initial certification that he was on active-duty status. In addition, Petitioner argues the Government unjustifiably (1) obtained a new Form N-426 and (2) argued the court was bound by the Navy's most recent certification. *See also* J.A. at 484–86. If the Government was bound by the Navy's certification of Petitioner's status, Petitioner argues, then the Government should have accepted the first completed N-426 and naturalized him accordingly. Because he had already passed his natu-

ralization exam and background checks, and with Meeks's Form N-426 certifying his active-duty status, Petitioner argues the Government had no basis for denying his application for citizenship and, therefore, delayed his application unjustifiably. This delay forced him to file suit. Lastly, after he had been forced to file a lawsuit, Petitioner argues, the Government altered the facts of the case by obtaining Fischer-Anderson's Form N-426 in order to bolster its litigating position that Petitioner had not served on active-duty and was, therefore, not eligible for naturalization.[1] For these reasons, Petitioner contends the Government's position is not substantially justified.

The Government, on the other hand, argues the central issue in this lawsuit is and has always been whether Petitioner was eligible for naturalization. The answer to this question turns on whether Petitioner served on active duty while a midshipman at the Academy. Both parties have stated numerous times that this is a question of first impression.[2] As the Government notes, litigating cases of first impression is generally

---

[1]Before the district court, the parties declined to delve into the facts surrounding the new Form N-426, such as whether the Government somehow fraudulently obtained it. The court seemed to conclude the form had been obtained for the purpose of bettering the Government's litigating position but did not rely on any Form N-426 in deciding this case. Nor will we speculate on the Government's motive in obtaining Fischer-Anderson's Form N-426.

[2]At oral argument, Petitioner's counsel argued the question to be answered in this case was not "what does it mean to be on active duty?" but "whether the Navy has certified [Petitioner was] on active duty." Because, in his view, the relevant statutes and regulations tasked the Navy with determining the active duty status of its Academy students, counsel seemed to argue the case was "not a case of first impression, it's a case under a statute that's been interpreted before . . . ." Even if Petitioner has correctly framed the question the district court had to answer in this case, there are no cases in this Circuit addressing whether USCIS is bound by the Navy's certification of a midshipman's active duty status or whether a foreign national's attendance at the Academy constitutes active duty service. Thus, this case is properly termed one of first impression.

justifiable. *Hyatt v. Shalala*, 6 F.3d 250, 256 (4th Cir. 1993); *Southern Dredging Co. v. United States*, 1996 WL 516158 at *2–3 (4th Cir. 1996) (unpublished).

At the outset, we note the Government correctly argues Petitioner bears the burden of demonstrating his eligibility for citizenship: "[I]t has been universally acknowledged that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated that doubts should be resolved in favor of the United States and against the claimant." *Berenyi v. Immigration & Naturalization Service*, 385 U.S. 586, 637 (1967). Courts have the power to confer citizenship only "in strict compliance with the terms of an authorizing statute." *Immigration & Naturalization Service v. Pangilinan*, 486 U.S. 875, 884 (1988). The Government argues Petitioner did not satisfy his heavy burden of proving his eligibility for citizenship.

Below, the Government's argument rested on the interpretation of statutory text, analogous cases, and Congressional intent. In a nutshell, the Government contended the court was bound to accept the Navy's Form N-426 certification that Petitioner was not on active duty while at the Academy. Alternatively, if the court decided to accept neither form, the Government argued the court should consider relevant statutes and analogous cases, which, in its view, revealed that Petitioner had not been serving on active duty status at the Academy. Nor, according to the Government, did Congress pass § 329 with the intent to reward activity such as Petitioner's attendance at the Academy as active duty service. We consider each of the Government's arguments briefly.

To support its first point, the Government argued 8 U.S.C. § 1440(a) required it and the court to accept the Navy's certification that Petitioner was not on active duty status during his time at the Academy. Section 1440(a) provides, in relevant part: "The executive department under which such person served shall determine whether persons have served honor-

ably in an active-duty status, and whether separation from such service was under honorable conditions." The Government argued the court was not bound by the original Forms N-426 certifying Petitioner's active duty status because from the beginning, "he was not serving on active duty, and those are the facts." J.A. at 489. Essentially, the Government argued the Navy was mistaken in its original Form N-426 certification and sought to correct its mistake. *See Bagheri v. I.N.S.*, 2000 WL 335712, at \*1 (9th Cir. 2000) (unpublished) (concluding the petitioner was ineligible for naturalization under § 329 because the Navy retracted its certification of his active duty status after concluding his participation in a Reserve Officers' Training Corps training cruise was not active duty service).

Anticipating the district court's rejection of the conflicting Forms N-426, the Government made several statutory arguments. First, the Government pointed to the definition of active duty in 10 U.S.C. § 101:

> The term "active duty" means full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned.

*Id.* § 101(d)(1). Though the text of this provision could be read to include cadet time as active duty service, the Government urged the district court to follow the Ninth Circuit's logic, found in a footnote in *Jacobs v. United States*, 680 F.2d 88 (9th Cir. 1982): "We agree with the district court that, because of the phrase 'while in active military service,' [the definition of active duty] refers to education that takes place after an officer has been commissioned, and not . . . before." *Id.* at 89 n.2. According to the Government and the Ninth Circuit, because Petitioner had not obtained a commission before

attending the Academy, his attendance at the Academy did not fall within the statutory definition of active duty.

Second, the Government urged the district court to consider the text of 10 U.S.C. § 6959, which provides in relevant part: "The Secretary of the Navy may . . . order to active duty for such period of time as the Secretary prescribes . . . a midshipman who breaches an agreement [regarding service in the armed forces upon graduation from the Academy]." *Id.* § 6959(b)(1). The Government reasoned that if a midshipman could be ordered to active duty while at the Academy, his attendance at the Academy could not also constitute active duty.

Third, the Government pointed to 10 U.S.C. § 971, which prohibits officers from counting service performed as midshipmen at the Academy towards service credit. *Id.* § 971(a)–(c). If attendance at the Academy as a midshipman could not be counted toward the length of time an officer served, the Government argued, such attendance was not the same as active duty. Rather, § 971 distinguishes attendance at a service academy from the active duty service rendered by a "regular soldier." Appellee Br. at 28.

In addition, the Government provided analogous cases to support its position. J.A. at 232–42. In these cases, other courts concluded service in the Reserve Officers' Training Corps (ROTC) was not active-duty service. *Bagheri*, 2000 WL 335712 (concluding a ROTC practice cruise was not active duty service because the Navy retracted its certification of the petitioner's active duty status); *United States v. Chen*, 170 F.2d 307, 308–09 (1st Cir. 1948) (reversing the district court's grant of citizenship to a non-citizen who trained for two years with the University of Illinois ROTC because the petitioner was never issued a commission, he had never taken an oath, and his offer of service was rejected). The Government argued Petitioner's status as a midshipman at the Academy was analogous to the non-citizens in these cases whose

service in ROTC was not equivalent to active duty service or military service for the purposes of eligibility for citizenship.

The Government also relied on legislative history to demonstrate that Congress's intent in drafting § 329 was not to reward people like Petitioner with an accelerated path to naturalization. Rather, the Government argued, Congress intended to reward the "military service [of an] alien in times of war or undeclared military hostilities with due recognition of the dangers and risks inherent in such service wherever it might be because of the ever-present possibility of reassignment to the war zones of operation." S. Rep. No. 1292, 90th Cong., 2d Sess. 13, *reprinted in* 1968 U.S.C.C.A.N. 4517, 4527. The Government argued that service at the Academy does not present the same risks of being called to serve in "the war zones of operation." Thus, Petitioner should not be naturalized under § 329 because his time at the Academy was not the sort of service § 329 was intended to reward.

Further, though Petitioner argues the Government's prelitigation conduct was not substantially justified because it unreasonably delayed and refused to accept the Navy's certification of Petitioner's active duty status, the Government responds that while the Navy may have altered its position because of a mistake, USCIS continually questioned whether Petitioner had met his burden to demonstrate eligibility for citizenship. Any delay, argued the Government, resulted from its attempt to thoroughly investigate Petitioner's application.

The district court's consideration of these arguments is clear from the record, which includes a transcript of a hearing where the court thoroughly questioned counsel for both parties about their positions. As a result, though the district court's order denying Petitioner's request for EAJA fees only briefly explained the court's reasoning, both the order and the record reflect that the district court considered the arguments of both parties to be reasonable. We agree. In this case of first impression, the Government made reasonable arguments

based on statutory interpretation and analogous cases. The district court, therefore, did not abuse its discretion in deciding the Government's position was substantially justified.

## III.

Petitioner argues in the alternative that the district court did not sufficiently explain its reasons for finding the Government's position to be substantially justified. He points to the fact that the district court did not even wait for the Government to respond to his motion for EAJA fees before ruling. The Government contends that the arguments made below are clearly reflected in the record, and despite the district court's minimal reasoning in its order denying EAJA fees, we can, therefore, determine exactly what the district court considered in evaluating the Government's position.

As Petitioner correctly notes, we have twice remanded EAJA fee cases for the district court to explain its reasoning for concluding the Government's position was substantially justified. *See Mann v. Astrue*, 258 Fed. App'x 506 (4th Cir. 2007) (unpublished); *Morgan v. Barnhart*, 227 Fed. App'x 235 (4th Cir. 2007) (unpublished). Our reason for remanding in those cases was: "[W]e cannot properly review the district court's decision without an explanation for how it reached that decision." *Morgan*, 227 Fed. App'x at 237; *see also Mann*, 258 Fed. App'x at 508. In the instant case, on the other hand, the district court set forth the governing law, then provided analysis for each part of an EAJA inquiry. First, the court concluded that Petitioner was the prevailing party. Second, though it did not include the words "substantially justified," in its analysis, the district court explained that the case was unique, reasonable arguments existed on both sides of outcome determinative issues, and other judges could disagree with its decision for Petitioner. J.A. at 442. Thus, the district court considered what the Supreme Court requires: that is, whether the Government's position would be acceptable to a reasonable person. *Pierce*, 487 U.S. at 565. Moreover, the

record contains not only the parties' motions and supporting briefs but also a transcript of a hearing where the district court inquired extensively into both parties' arguments. Thus, we can determine that the district court did not abuse its discretion in concluding those arguments were reasonable.

Petitioner does not provide, nor could we find, precedent requiring a district court to perform a certain kind of analysis, recite certain magic words, or follow a particular formula when denying motions for EAJA fees. While the district court in this case could have set forth its rationale in more detail, we can discern from the record what the district court meant when it said both parties made reasonable arguments. Moreover, as *Pierce* requires, the district court determined the Government made arguments which would be satisfactory to a reasonable person. *Pierce*, 487 U.S. at 565. Thus, despite the district court's perhaps overly concise explanation, the record provides sufficient information for us to review its decision. Nor do we think a remand would yield any different result or new information. Indeed, doing so would tend to turn Petitioner's request for EAJA fees into a "second major litigation," a course of conduct we have expressly cautioned against. *See Hyatt v. Barnhardt*, 315 F.3d 239, 253 (4th Cir. 2002) ("'A request for attorney's fees should not result in a second major litigation.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))).

Accordingly, the district court's denial of Petitioner's request for EAJA fees is

*AFFIRMED*.